**STATE of Missouri, Respondent,**

v.

**Lesley H. SPEIGHTS, Appellant.**

**No. 56645.**

Supreme Court of Missouri,
Division No. 1.

April 10, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Stuart M. Haw, Jr., St. Louis, for appellant.

BARDGETT, Judge.

Upon a jury trial Lesley H. Speights was convicted of robbery in the first degree, a felony under § 560.120, RSMo 1969, V.A.M.S., and sentenced by the Court to twenty years in the Department of Corrections under the Second Offender Act, § 556.280, RSMo 1969, V.A.M.S., and defendant has appealed. At the time this appeal was filed exclusive jurisdiction of appeals in felony cases was vested in this Court. Article V, § 3, Constitution of Missouri, 1945, V.A.M.S.

Two points are raised. They are (1) "The Trial Court erred in overruling defendant's Motion for Judgment of Acquittal

at the Close of the Entire Case because the confrontation between the State's witness, Rycken and the defendant at the police station was so unnecessarily suggestive as to give rise to an irreparable likelihood of misidentification which tainted the entire proceedings and amounted to a denial to the defendant of due process of law", and (2) "The Trial Court erred in allowing testimony concerning an alleged statement made by the defendant to the police over defendant's objection and without allowing defendant opportunity to inspect the police report concerning such statement."

Leo Rycken, the victim, testified that for reasons immaterial to this case, he left the Missouri Athletic Club at about 1:00 a. m. on the morning of June 5, 1970, and walked a short distance to the intersection of Broadway and Washington and stopped on the northeast corner of the intersection waiting for the traffic light to change. Three Negro men came up behind him. One man stood on his left, one on the right and one behind him. The man on the right was wearing a green sweater and a tan jacket. The intersection was well lighted. Mr. Rycken identified the defendant in court as being the man on his right. When the light changed, the man on the left said, "Quick, grab him." At that moment the men beside him grabbed his arms and pulled him down. Speights was one of the men who pulled him to the ground. One of the robbers took Rycken's wristwatch and another tore his hip pocket off taking his wallet containing some money. Rycken tried to resist because he was afraid of what might happen to him. Rycken had hold of Speights' hips and continued to hold onto him while Speights tried to get away, a distance of fifteen feet or so. About that time a police car pulled up and the officer immediately took hold of Speights, who, according to Rycken was then about five feet from him and who, according to the officer, Lt. McGauley, was still being held onto by Rycken. The officer called to the other two robbers to halt. One came back and was arrested and the other got away.

Speights and the other robber were taken to the police station.

On cross-examination by defendant's attorney Mr. Rycken testified that he was brought to the police station about forty-five minutes after the robbery. He was taken to a room in the station. In the room were Speights, the other robber and several uniformed policemen. Lt. McGauley was present and asked Rycken if the men who robbed him were present at which time Rycken identified Speights. There was no lineup and Speights and the other robber were the only two black men not in police uniform in the room.

Lt. James McGauley of the St. Louis Police Department testified that about 1:50 a. m. on the morning in question he was driving east on Washington Avenue and at Broadway he saw three colored men come behind a white man on the northeast corner; that the light changed and the Lieutenant turned right to go south on Boadway. He looked in his rearview mirror and saw the three men knock the white man down and they were kneeling over him, punching on him. The Lieutenant turned his car around and headed for the northeast corner of the intersection. The men got up and three Negro men started running east on Washington. Rycken was holding onto one of the robbers as the Lieutenant pulled up to the curb. McGauley got out and immediately grabbed hold of the man Mr. Rycken had been holding onto at which time the man threw a cloth packet across a small retaining wall. The Lieutenant identified defendant as the man whom the Lieutenant grabbed as Rycken lost his grip on him and who threw the packet over the retaining wall; he also identified the cloth packet as being the pocket of the victim's pants.

Defendant testified and denied participation in the robbery claiming he had just gotten out of a car when he saw a tussle going on at the corner of Broadway and Washington; that he ran because he did not want to be found at a place where a robbery was occurring because of his previ-

ous convictions; he denied that Mr. Rycken had hold of him at any time. On cross-examination he was asked if he made a statement that he had observed a dice game between the victim and Eley (the other robber) and that the victim owed Eley $30.00 and that the victim's watch was his payment. The defendant denied making such a statement.

In rebuttal the State called Lt. McGauley back to the stand. He testified that defendant had been advised of all of his rights and that defendant made a statement thereafter. Defendant demanded a copy of the statement before the Lieutenant testified to it. The prosecutor stated that the statement was one sentence long and that he would give it to defense attorney, and such was done. Defendant then demanded a copy of the full police report which was denied. Thereafter McGauley testified that defendant made the following statement: "He said he was with Eley when Eley won the watch in a crap game from Rycken or won it from Rycken in a crap game."

 As to point one on this appeal, defendant cites United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966); United States Constitution Amendment 14, for his position that the police station identification tainted the identification testimony of the victim because of the lack of a fair lineup and as a consequence he was denied due process of law.

Here the defendant was literally caught in the act and was handed over by the victim to Lt. McGauley who also observed the altercation on the street corner, as well as the defendant's act of throwing the victim's pocket and wallet over the retaining wall. The victim saw defendant standing beside him even before the robbery and held onto the same man after the robbery. There is no basis for believing the short confrontation of the defendant and the victim at the police station or the remarks of Lt. McGau-

ley to the victim at that confrontation had any effect whatever upon the in-court identification testimony of the victim. The authorities cited by defendant are not apposite. The point is overruled.

 As to point two, the evidence reflects that the defendant was provided with the statement given by defendant at the time the defendant demanded it. This occurred during rebuttal at the very end of the case. We go no further than to say that in these circumstances the court did not err in refusing to order the prosecution to turn over the entire police report to the defense. The point is overruled.

Judgment affirmed.

All of the Judges concur.